Thank you. Good morning, Your Honors. Janet Tong, Federal Defenders, on behalf of Mr. Amezcua. I'm going to try to keep my eye on the clock and sit down. I've completely run out of rebuttal time. Mr. Amezcua's 52-month sentence was unreasonable. It was reached through a mechanical application of a guidelines provision that was an unreasonable provision. Let me ask you something about this. We have a case that – have we come down yet with Gordy Zavala? Yes, Your Honor. It doesn't say that the guideline sentence is presumptively okay, but I can't tell what the difference is between what it says and presumptively okay, as you know from the concurrence I joined. The judge calculated a guideline sentence. We don't confer in advance, but it looked to me as though the calculation was right because the guidelines don't say old crimes don't count for the 1326. And then he quite summarily said, I've looked at 3553 and it doesn't make any difference. It kind of sounds from Gordy Zavala as though that's all he has to say to show us that he thought about it. What am I missing here? I understand, Your Honor, that Gordy, I think with the concurrence, it leaves some room open for debate about what was actually accomplished in that case, but the majority opinion explicitly rejected a presumption of reasonableness. Maybe you could tell me what the distinction is so that the majority is better for you. Your Honor, I think it comes down to, well, let me just say this. I think in any event, it doesn't matter in this case. In terms of whether or not there's a presumption, it certainly seems like there's a debate in the court. Okay, let's put it a different way. Why does the judge have to say more than the judge did about 3553? Your Honor, that's certainly part of my argument is that the judge did not say enough. The remainder of my argument is that the sentence was unreasonable and it was substantively unreasonable. It was simply too long in light of. So you mean there's nothing he could have said that would make it okay? That's not, I wouldn't agree with that, Your Honor. I believe what was most missing here was the kind of analysis that Section, in the Chapter 4 requires, Section 4A1.3 actually explicitly says that a really old conviction can justify an upward departure from the criminal history category. But 4A1.3c actually has an explicit provision saying there's got to be written findings explaining why a conviction that's so old it presumptively does not score under 4A1.2, why something like that is specifically that prior conviction would justify an increase based on, say, seriousness or likely recidivism. The sentencing concerns just under 3553A. And let me say this, Your Honor. It just, it makes no sense that. But 4 just, Chapter 4 is just for criminal history points. That's correct, Your Honor. It's not for the vertical axis. That's correct, Your Honor. And I think that provision is extremely relevant here and cannot be ignored here because that's the provision that takes into account what, how a prior conviction affects those four sentencing concerns that the statute, 3553A.2, talks about as being relevant to the way a prior, the way a prior conviction is relevant to the sentence that a defendant should get based on his offender characteristics separate from the offense characteristics. Now, it, and it makes no sense, Your Honor, that the biggest increase in the guidelines, this plus 16 enhancement, is, is for a predicate, a predicate fact that the sentencing commission elsewhere in the guidelines, in Chapter 4, found so old that in 4A.1.2 it said this is presumptively irrelevant, irrelevant to culpability, general deterrence, specific deterrence, and rehabilitation. Now, it, I think it helps to look at the, the numbers here. The criminal history category that Mr. Amescuo was in, a Category 2, if, if his prior 1981 conviction had counted under criminal history category points, it would have added three points and made him a Category 3. That would have been a two-month difference in his mid-range sentence. The sentencing commission took a look at that prior conviction in Chapter 4 based on the empirical data it had before it, and it said, well, that two-month difference, that's, that's too much to impose a per se sentence increase. But, and that's where the real problem of 2L1.2b1a shines out, because that two-month difference that was too much, the sentencing commission, without any basis in empirical data or statutory grounding, in 2L1.2b said, well, we're going to just impose a 45-month increase. That's six times more the difference that was, that was rejected in, in Chapter 4. And let me What was his guideline range if, if he doesn't have the enhancement? If he did not have the enhancement, he would have started out as a, at a base offense Level 8. I believe he was given two levels off for acceptance of responsibility. So he would have been in, in, in a Level 6 in criminal history Category 2, which would have given him a 4 to 10-month range. Which is, Your Honors, why I think the 52-month sentence was, was substantively unreasonable. And let me also point out that this was a conviction that happened in 1981. The time of sentencing, this was 26 years ago. And the guideline that is, was a problem here has exactly the same application. It's, it doesn't make sense. It doesn't differentiate in a way that makes sense. Because it has the exact same application to someone in Mr. Meskoa's position who was convicted of something in the 1980s, the early 80s, has paid his debt to society, served his sentence. And, you know, and is, is back in the country on an illegal reentry offense. It has the exact same application, a plus 16, to him, to Mr. Meskoa, somebody with a prior conviction 26 years ago, as it would for somebody who committed something like a murder one year ago. And the same application to somebody who had committed some other offense of this nature, you know, 50 years ago. It doesn't differentiate. And one other thing I'd like to, to point out is that, well, of the assurances that the Supreme Court recently. I suppose one way to look at it would be, it's not so much the guidelines giving a great, well, one way to look at it is the guidelines give a tremendous increase for a prior conviction for a crime of violence. Another way to look at it is that the guidelines give a tremendously lower sentence for people whose only crime is sneaking back in after they got deported. But as for people that were, at any time, violent criminals, they shouldn't sneak back in and they're going to get harshly punished if they do. Your Honor, I think in a lot of ways that question kind of hits the nail on the head because it shows where prior courts have gone wrong. It's by defining this offense, the prior conviction, as part of the 1326 offense. And we've seen that in Laura Seves. In fact, that case specifically says that the prior conviction is about the seriousness of the offense. The Supreme Court came out in 1999 and told us it has nothing to do with the crime itself. This is an offender. Are you suggesting that Laura's been overtaken by other cases? Your Honor, my position is that Laura Seves does not have any weight as to this argument. Laura Seves was decided while the guidelines were mandatory, and it was not decided on a reasonableness question. And I would say that that case has been. But the reasoning there is that, as Judge Kleinfeld explained, that the guidelines punish sneaking back into the country as a felon quite a bit more severely than they do just sneaking back into the country. And that is sort of irrespective of whether the crime is an old one or not, which goes to the recidivism concerns, which is a different axis. Yes, Your Honor, and Laura Seves, the exact quote from that case, it says that that aggravated felony enhancement is a specific offense characteristic as such as a measure of the seriousness of the crime committed. And it pulled that language from a 1997 pre-Almendarez-Torres case and out of the circuit. And Almendarez-Torres came back and said recidivism does not – this is about recidivism and recidivism does not relate to the commission of the offense. And those two statements in Laura Seves and in what the Supreme Court said are irreconcilable. And, Your Honor, if I may, I would like to reserve just a moment. I'm still just a little puzzled as to what you think we should do with Laura. Do you think we just have to ignore it? Do you think it's been overruled sub silentio? What is your position on it? Your Honor, I believe the reasoning no longer holds true. If it needs to be described as something that's been overruled, I would agree that it has been. Overruled by which case? I would say that it cannot – its reasoning cannot stand after Almendarez-Torres and certainly not after Apprendi confirmed that that was the basis of – that recidivism was the basis of Almendarez-Torres. And if I may just reserve two seconds. Counsel, even though you used your time, we'll give you one minute for rebuttal. Okay. Counsel. Good morning. May it please the Court, Christopher Alexander for the United States. I'd actually like to start with the last point that was made by defense counsel relative to Almendarez-Torres. Almendarez-Torres was decided in 1998. And getting to Judge Bybee's question, Laura Osves was decided in 1999. And particularly there was a quote towards the end of the case that we highlighted twice in our brief. And I'll quote it. In other words, we find it particularly troublesome to have illegal aliens returning who are not just illegal aliens but also criminals. Where are you quoting from? Which page? I'm quoting from page 10. I'm looking – I don't mean from your brief. I mean from the case. Oh, from the case. It's at pen site 1013 through 14. And there's a blocked portion towards the end of that blocked portion. The Seventh Circuit, you mean? Correct. And the criminal history category, however, serves a different purpose of evaluating the likelihood that any defendant will commit another crime in the future. It judges recidivism more generally. Let me ask you a question about this. It looks to me as though Laura Osves tells us about guideline calculations, period. It does not tell us about 3553 evaluations of the guidelines in connection with the other factors. Doesn't that mean, or why doesn't it mean, that we can just follow Laura Osves and say the judge was right on the guidelines calculations? That's all over. But now we evaluate whether the sentence is reasonable under 3553. Well, I think the courts have always required that the sentence be reasonable, and the guidelines themselves provide one of those guidelines. No, no. Under Booker, you needed to go through quite a song and dance to deviate from the – or before Booker, you had to go through quite a song and dance to deviate from them, and now you don't. Correct. But the language for 3553a hasn't changed, the idea being that you must provide some type of explanation for the sentence. Well, here he's got one. He had a wild and unruly youth. He was a very bad man in his youth, and now all he does that's bad and all he's done that's bad for years and years is anesthetize himself with alcohol and drugs. Hasn't done anything bad to anyone else for a long time. Decades. And, Your Honor, this gets back to the purpose for 2L1.2. You look at Title 8, United States Code Section 1326, and it provides for tiers of statutory maximums, 2 years, 10 years, and 20 years for individuals that have been previously convicted of an aggravated felony. Those tiers are not – there's nothing within the statute that provides for a temporal limitation, and for Mr. Meskovaskis, the victim of his voluntary manslaughter is no less dead 15 years later. The idea is that behind the statute we want to deter individuals that have convicted – or that are convicted of serious crimes forever. We don't want these individuals coming back into the United States. And when the sentence – How come there was such a long delay in deporting him? Your Honor, he served a long sentence. He was not deported immediately. When did he get out of prison for the manslaughter? Your Honor, I don't recall off the top of my head. I judged – it looked to me from the subsequent offenses as though he didn't serve that much time. You're correct. He did serve an amount of time. He was not immediately identified as an individual that should be removed from the country. How does that work? I mean, he's an illegal alien who's killed a man. He's not an alien. Wasn't he a permanent resident? Well, yes, he had status at the time. And then it wasn't recognized that he should be removed from the United States because of his aggravated felony. Later it was recognized. How does that happen? I don't have an answer for the court regarding that. During the time period, he had a – Isn't there some bureaucratic procedure where the California prisons just inform the DHS or something like that? Well, the procedures have changed. For example, in prison now, there are individuals that will interview individuals that are suspected of being in the country illegally. But at the time, Mr. Mescavazquez was not illegally in the country. He had status. He had a green card. And what needed to happen is there needed to be deportation proceedings initiated against him. And that didn't occur until much later when he came into contact with law enforcement. The intervening legislation made him deportable. Well, he actually was always deportable because he had been convicted after a jury trial. So there was no issue regarding St. Cyr or anything along those lines. He was always subject to removal. It just – the recognition never occurred. Well, if we're punishing people who have committed a violent crime, doesn't, just as a matter of sort of common sense, the staleness of the conviction have any effect at all? Well, it does from the standpoint of the criminal history. Oh, I understand that. I mean the seriousness of the offense of reentry. Supposedly this enhancement, the rise in the offense level, occurs because the crime of reentry is more serious when you have a conviction. But if I'm looking at the crime of reentry, I would think that how serious – how much more serious it becomes, it's very hard to think in terms that totally avoid the staleness of the conviction. Well, you look at the statute. The statute provides no temporal limitation. And what the Sentencing Commission did is they looked at the statute, saw that there was no temporal limitation, and incorporated that into 2L1.2. And that was a valid exercise of the Sentencing Commission's authority, and that was something that was recognized in United States v. Ramirez-Garcia in 2001. Subsequently, there have been challenges that are somewhat analogous to the challenges being made here regarding the temporal limitations and trying to incorporate the limitations from Chapter 4 into Chapter 2, and specifically 2L1.2. Is his reentry with his conviction causing him to serve more time in prison than his original conviction did? I don't recall. He got sentenced to 52 months as a result of his conviction most recently. He was given an original sentence for the voluntary manslaughter and violated his probation and received an additional sentence. And he actually had been sentenced to close to about the same amount of time as a result of the original sentence and the subsequent revocations as well. Now, looking at the importation of the temporal limitation, that's not something that obviously the Sentencing Commission sought to do. No, it's just whether – I mean, there's no question that the guidelines – I think the Court understood the guidelines, and the only question is whether the guidelines come to a sentence that's unreasonable in this case. Yes, and the reasonableness – this gets back to the Cardi decision, where basically there was a distinction without a difference. I think this was recognized by Judge Kleinfeld. I never understood it, but the decision goes as far as it can to say it's not a presumption. Correct, but applying what is in essence a presumption. As long as the district court sentenced within the guideline range and provided an explanation, that should be sufficient regarding the 3553A factors. If it's a sentence outside of the guideline range, then a more extensive explanation is required. It says whether it's a presumption or not, it's certainly rebuttable. Yes. It certainly went – Rebuttable. Yes, and as far as the presumption itself – Well, let's say there is a presumption. Why isn't it overcome by this fellow's not doing any harm to anyone for almost 30 years? Well, the district court had an opportunity to look at all the 3553A factors, and I think not only did the court tick through just about every single 3553A factor, and that's an excerpt of record 94 through 96. The court specifically addressed many of those issues. I read it. It looked like it was just a recitation. Well, there was a recitation because the court said at the very beginning of the proceedings, I've read and considered the pre-sentence report, the defense filings, the government's filings, and all those included references to the various factors under 3553A. The district court listened to the arguments by defense counsel, including requests for downward departure. And as a part of the district court's pronouncement of sentence, the district court said, quoting, with respect to the request for downward departure, the court recognizes that it does have discretion to depart downward but declines to do so. Later on, it says that I've considered the same arguments with regard to the 3553A factors. And then finally, the district court says, and so for those reasons, as I've indicated, I've considered all the 3553A factors as well as the advisory sentencing guidelines, and I do think a sentence of 52 months, which is – what it suggested to me there was 3553A2C, to protect the public from further crimes of the defendant. If a person just keeps hurting other people, you really want to cage him up. But if he hadn't hurt anyone for 30 years or close to it, then the need to cage him up is vastly reduced. Well, it is, and I think that the court recognized that he continued to be involved in self-medicating, and it may just be luck that he had not hurt anyone else throughout that time period. Maybe whenever he has the urge to go get in a fight, instead he just sits in his easy chair and gets drunk. Well, I think the preference of the United States would be that he just stay in Mexico. I see my time has expired. May I just have a moment to conclude? Wrap up. There are two arguments raised by the defense, namely that 201.2 is unreasonable, and simply that can't be the case. It serves the purposes of sentencing under Section 1326, and as far as the guideline itself, if you assume a most serious criminal history, a Category 6, you assume a plus 16 enhancement, it's still less than half of the statutory maximum. So to argue that 201.2 is unreasonable, it just simply doesn't make sense. And then finally that the sentence was unreasonable in and of itself because the judge didn't sufficiently state its reasons. Clearly the court did state its reasons, and under CARDI it has met its burden. Thank you, counsel. Thank you. Judge Kleinfeld, I don't think I gave you a satisfactory answer to your question before about why a presumption should not apply here. And, you know, my answer to that is that the presumption, the Supreme Court has told us that if a presumption, if it applies to the guidelines, is because it happens only when the Sentencing Commission is acting within its institutional role. And that occurs, as the Supreme Court told us in Kimbrough, that occurs when there's empirical data that backs up the guideline and when there's solid statutory grounding for the guideline. And in Kimbrough that wasn't there, just like it wasn't here for 201.2. Contrast with Chapter 4, which was based on decades of experience, based on empirical data. 201.2 doesn't have that. And it wasn't statutorily required the same way Chapter 4 was required under 28 U.S.C. 994. Now there's one other thing I'd like to address that the government raised, which was the suggestion that the sentencing increases in 201.2 are in some way related to 1326B's increased statutory maxima. That relationship is not there. The statutory, there's no statutory mandate in 1326B that requires these kinds of increases of this particular nature. And they actually, instead of, the Sentencing Commission's guidelines, instead of tracking the statute, actually expressly deviates from the statute in several ways. And one of which, an example of which is in the 1326 plus 16, I'm sorry, the 201.2 guidelines plus 16 definition of crimes of violence imports different kinds of crimes that would not qualify as aggravated felonies under the statute. So we have 201.2 would add 16 levels for certain crimes that don't even merit the 20-year enhanced, the 20-year stat max in 1326B. Thank you, counsel.
judges: Canby, Kleinfeld, Bybee